966 F.2d 1454
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Frances A. SOLLY and Frederic R. Roby, Plaintiffs-Appellees,
v.
MANVILLE CORPORATION ASBESTOS DISEASE FUND and
Owens-Illinois, Inc., Defendants-Appellants.
 Nos. 91-3081, 91-3196 and 91-3082.
 United States Court of Appeals, Sixth Circuit.
 June 8, 1992.
 
 Before KEITH and MILBURN, Circuit Judges, and ENSLEN, District Judge.*
 PER CURIAM:
 
 
 1
 This case arises from two jury trials initiated by plaintiffs-appellees Donald J. and Frances A. Solly[1] ("Solly") and Frederic and Evelyn Roby ("Roby") for injuries allegedly sustained by Donald Solly's and Frederic Roby's exposure to asbestos. Defendants represent previous manufacturers of products containing asbestos to which plaintiffs were allegedly exposed. Plaintiffs alleged at trial that their exposure to defendants' products resulted in their injuries. The juries in both cases found in favor of plaintiffs. For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 Both of the instant cases were part of a larger cluster of 300 cases, referred to as the 300/88 cluster, that were consolidated under the Ohio Asbestos Litigation Case Management Plan and Case Evaluation and Apportionment Process ("OAL"). In May 1990, the two cases were assigned to a sub-cluster of 16 cases and were set for trial. The trial began as a joint proceeding in July 1990 wherein "common issues" to the two cases were heard before two juries. Chief Judge Thomas D. Lambros presided over the joint proceeding, except on two days when Judge David D. Dowd, Jr. substituted Judge Lambros. The cases were separated two weeks later into individual proceedings. The proceeding for Roby continued before Judge Lambros and the Solly case convened before Judge Dowd. The plaintiffs' backgrounds were as follows.
 
 
 3
 Donald Solly was born in 1924 in New York State. He lived in New York until 1974. Solly began working as an insulator in New York in 1944, joining the International Association of Heat and Frost Insulators and Asbestos Workers in 1947. After leaving New York, Solly settled in Kentucky, where he resided until his death in 1989. Solly began working in Ohio as a superintendent at insulation job sites in 1976, although he never resided in Ohio. In 1986, Solly contracted asbestosis and in 1988 he contracted lung cancer. He died on January 12, 1989.
 
 
 4
 Frederic Roby worked as a pipefitter and sheet metal worker for 34 years, from 1946 to 1980. From 1946-1961, he worked for the Baltimore & Ohio Railroad ("B & O"). From 1948-1958, he worked with and around an asbestos-containing insulation product called Kaylo, which was manufactured by defendant Owens-Illinois, Inc. ("O & I"). Roby subsequently contracted mesothelioma, a form of cancer allegedly caused by his exposure to asbestos.
 
 
 5
 This timely appeal followed the jury verdicts in favor of plaintiffs. We review defendants' claims against each plaintiff separately below.
 
 II.
 A. THE SOLLY TRIAL
 
 6
 Defendants O & I and The Manville Fund ("Manville") contend that the district court made several errors at the trial initiated by Solly. Both parties claim that the district court improperly applied the law of the State of Ohio in ruling on Solly's claims, rather than the law of New York; that the district court improperly admitted evidence of Solly's work history; and that the evidence was insufficient to support the verdicts against them. O & I raises several additional issues, which are discussed below.
 
 1. Choice of Law
 
 7
 An appellate court examines a district court's choice of law ruling under a de novo standard of review. See Salve Regina College v. Russell, 111 S.Ct. 1217, 1218-1221 (1991). Moreover, a federal court sitting in diversity must apply the conflict of laws rule of forum state. See Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496 (1941). Defendants contend that New York law should have applied in this case.
 
 
 8
 Prior to 1971, Ohio law mandated that the rule of lex loci delicti, the law of the place of injury, controlled in tort actions. The Ohio Supreme Court subsequently modified this rule and adopted Section 145 of the Restatement (Second) of Conflict of Laws, which provides that the law of the state with the "more significant relationship to the lawsuit" should apply. Morgan v. Biro Manufacturing Co., 15 Ohio St.3d 339, 474 N.E.2d 286, 289 (per curiam) (1984). Morgan provides as follows:
 
 
 9
 When confronted with a choice-of-law issue in a tort action under the Restatement of the Law of Conflicts view, analysis must begin with Section 146. Pursuant to this section, a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship. A court must then proceed to consider the general principles set forth in Section 145. The factors within this section are: (1) the place of injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any other factors deemed relevant to the litigation. All of these factors are to be evaluated according to their relative importance to the case.
 
 
 10
 Id. at 289 (emphasis added). As noted, the query begins with an analysis under Section 146 of the Restatement, which provides that:
 
 
 11
 In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship ... to the occurrence and to the parties, in which event the local law of the other state will be applied.
 
 
 12
 Id. at 342 (emphasis added).
 
 
 13
 For purposes of ruling on the choice of law issue, the district court held that the state where the injury occurred was New York.[2] Defendants contend that this finding raised a presumption that New York, rather than Ohio, law applied. It is defendants' contention that the district court simply ignored this presumption and the alleged fact that there was no evidence to rebut it. Moreover, defendants contend that New York has the most significant relationship to the occurrence and parties herein.
 
 
 14
 The evidence in this case indicated that Solly's alleged exposure to asbestos in Ohio was less in duration and intensity than his alleged exposure in New York. This conclusion is supported by Solly's 50 year residency in New York, his 29 years of employment as an insulation mechanic in New York and the "20 years or greater" latency period ordinarily associated with asbestosis. In contrast, Solly worked for a shorter period of time in Ohio and then as a supervisor where he had less direct exposure to materials containing asbestos.
 
 
 15
 In deciding to apply Ohio law, the district court considered contacts in Ohio such as the following:
 
 
 16
 1. Four of the defendants in Solly's action had their principal place of business in Ohio;
 
 
 17
 2. Solly was exposed to asbestos in Ohio, and his last injurious exposure to asbestos was in Ohio at the Aberdeen Powerhouse in 1980;
 
 
 18
 3. Solly filed for and received Ohio workers' compensation benefits for a tumor allegedly caused by his exposure to asbestos; and
 
 
 19
 4. Solly's exposure to asbestos occurred throughout the United States (e.g., Florida, Alabama, New York, Ohio, Kentucky and Indiana).
 
 
 20
 Solly argues that it is impossible to determine any single place of injury in this case given the fact that his injuries developed over a period of time. Therefore, the choice of law inquiry should focus on which state has the most significant relationship to the lawsuit. We agree that an inquiry into the place of injury is inappropriate since Solly's injury occurred in various places, including Ohio. Rather, the district court should have considered, as it ultimately did, the interests of each of the states in determining whether Ohio law should apply. Given the substantial interests of Ohio noted above, we hold that the district court properly applied the law of Ohio in this case.
 
 2. Evidence of Work History
 
 21
 Defendants contend that the district court erred in admitting documentation of plaintiff's work history and attempting to authenticate this information by evidence of a Simplified Pretrial Informational Transaction ("SPRINT") interview by Solly prior to his death. The district court admitted this evidence under the residual hearsay exception, Fed.R.Evid. 804(24),[3] finding that the evidence was sufficiently trustworthy to be admitted. This Court has held that "on the issue of trustworthiness, as with other evidentiary holdings, 'the trial court is given great latitude.' " United States v. Hathaway, 798 F.2d 902, 906 (6th Cir.1986) (citation omitted). Accordingly, we review a district court's ruling to admit evidence for an abuse of discretion. Id.
 
 
 22
 A SPRINT interview is a pre-trial claim verification used in certain OAL cases in lieu of depositions. It was developed to expedite the extensive discovery needed in asbestos cases and to reduce the transactional costs associated with that discovery. Information obtained from the interview is used primarily for settlement purposes. The OAL set up the SPRINT interview process in place of discovery by depositions, providing that depositions could be conducted by the parties later in proceedings if deemed necessary. SPRINT interviews consist of an interviewing "team" of one plaintiff's lawyer and one defense lawyer, with the interviewing format to be developed by the parties. Subsequent to the interview, written summarized narratives of each witness' interview are prepared by the plaintiffs' team and the defense team and are made available to all counsel.
 
 
 23
 Both defendants contend that Solly's work history was the primary evidence that Solly worked for defendants, during which periods he worked for them and that he was exposed to asbestos by defendants. According to defendants, this information was necessary to establish whether Solly worked at their facilities at all or for a sufficient period of time to suffer an injury from his alleged exposure to defendants' products. Solly argues first that the work history was not offered into evidence by Solly's counsel, but by defendant Pittsburgh Corning Corp. during its cross examination of one of Solly's co-workers. In any case, the district court determined that the document was trustworthy and was therefore admissible under Rule 803(24).
 
 
 24
 Defendants contend that the SPRINT interview does not satisfy the requirements of Rule 803(24) and thus the district court erred in admitting this evidence. Specifically, defendant Manville argues that there were three deficiencies in the interview process. First, defendant Manville states that notice of Solly's SPRINT interview was not given to defendants until ten days after trial began. Manville contends that this gave them inadequate time to prepare to meet and oppose the introduction of Solly's interview.
 
 
 25
 Manville also contends that the interests of justice were not properly served by admitting this evidence. Its argument in this regard is not entirely clear, but Manville makes several assertions that use of the procedure was unfair. For example, Manville contends that Judge Lambros initially stated that the testimony from these interviews would not be used at trial and then later admitted Solly's interview. In addition, SPRINT interviews are not generally intended to be admitted as evidence at trial. Finally, according to Manville, the interview was stenographically recorded and the parties were not notified that it would be recorded.
 
 
 26
 Manville and O & I also contend that the work history was not sufficiently trustworthy to satisfy Rule 803(24). To demonstrate the lack of trustworthiness, Manville points to Solly's testimony during the interview. Solly stated during the SPRINT interview that the name of one contractor was incorrectly reported and that he may have omitted the information when providing such information to his attorney. Solly could not remember the exact times that he worked for various employers, but stated that he "must have had something" on which to rely in completing the documented version of his work history. Defendants contend that because Solly could not verify the information, there was no adequate authentication of the work history. Moreover, Solly's uncertainty about information contained in the work history and his inability to authenticate the work history made the document untrustworthy.
 
 
 27
 First, we conclude that the district court did not abuse its discretion in rejecting defendants' claim that they had inadequate notice to prepare for the interview. In addition, we affirm the district court's ruling to admit the SPRINT interview. The district court opined that the SPRINT interview was trustworthy since it was taken in an adversarial setting, under oath and in the presence of a court reporter. Given these substantial procedural safeguards, we do not believe that the district court abused its discretion in admitting the SPRINT interview.
 
 3. Sufficiency of the Evidence
 
 28
 Both defendants contend that the district court abused its discretion in denying their motions for a directed verdict. Defendants assert that Solly failed to meet his burden of proving that exposure to either of defendants' products was the proximate cause of his injuries. This Court reviews a district court's ruling on a motion for directed verdict by the same standard used by the district court; i.e., whether the verdict was against the manifest weight of the evidence. O'Neill v. Kiledjian, 511 F.2d 511, 513 (6th Cir.1975).
 
 
 29
 The primary evidence of Solly's exposure to defendants' products was the testimony of Solly's former co-workers. This information was buttressed by the work history documentary evidence. The testimony was clearly sufficient to establish that Solly worked for defendants. In addition, Joseph Walters testified that Solly worked for Manville and that Solly was "exposed" to Manville's asbestos-containing products. Walters, along with Raymond Hearn and Norman Frick, also testified that Solly was exposed to O & I's asbestos-containing product, Kaylo. Moreover, there was testimony by Solly's medical expert that his exposure to asbestos throughout his employment led to his injuries. The expert testimony suggested that Solly's exposure to defendants' products contributed to his condition. We believe that this evidence was sufficient to support the jury verdict that defendants' products caused, at least in part, Solly's injuries.
 
 4. Assignment of more than one judge
 
 30
 Defendant O & I alleges that Judge Lambros committed clear error by assigning a different judge, Judge Dowd, to preside over a portion of Solly's trial. Defendant contends that Judge Dowd had not heard all of the evidence in the case or been in a position to observe the witnesses and, therefore, was not in a position to adequately review the sufficiency of the evidence. Contrary to O & I's assertions at oral argument, however, there is nothing in the record suggesting that O & I raised this issue below. A party may not attempt at the appellate level to materially alter his cause of action by advancing a charge for the first time. White v. Anchor Motor Freight, Inc., 899 F.2d 555 (6th Cir.1990). In light of O & I's waiver, we affirm the appointment of Judge Dowd to preside over Solly's trial following the "common issues" joint portion of the trial.
 
 5. Severance of Trial Against Defendants
 
 31
 O & I contends that the district court erred in denying its motion for severance from the trial against Manville. This determination is also reviewed under an abuse of discretion standard. United States v. Arthur, 949 F.2d 211, 217 (6th Cir.1991). O & I essentially avers that there was substantial evidence introduced regarding Manville which was unrelated to O & I. According to O & I, Manville was not motivated to fully litigate its substantive claims because The Manville Fund was merely established to compensate individuals who suffered injury from exposure to asbestos-containing products manufactured by Johns-Manville Corp. O & I contends that a joint trial under these circumstances increased its likelihood of being assessed punitive damages.
 
 
 32
 We note first that O & I was not assessed punitive damages and thus its argument that this was a likely result of the joint trial is untenable. Moreover, the issues related to Manville were broad and not likely to be confused with those related to O & I. Manville failed to contest its awareness of the health hazards of asbestos products, but this argument was clearly distinct from O & I's argument that it was unaware of the potential danger of its product. Therefore, although there were some inconsistencies in the trial strategies of Manville and O & I, the district court did not abuse its discretion in denying the motion to sever these trials.
 
 6. Extrajudicial Publicity
 
 33
 O & I contends next that two days prior to the jury verdict on August 1, 1990, a highly inflammatory newspaper article was published in The Cleveland Plain Dealer regarding this case. O & I did not learn of the article until September 25, 1990. It moved for voir dire upon learning of the article to ascertain whether any of the jurors had read or were prejudiced by the article. The district court never ruled on this motion. O & I contends that it must be presumed that the article was read by one or more of the jurors, and, accordingly, the jury verdict must be reversed or a new trial granted.
 
 
 34
 A district court has broad discretion regarding issues on voir dire. James v. Continental Insurance Co., 424 F.2d 1064 (3d Cir.1970). Fed.R.Civ.P. 47(a) provides that "the court shall permit the parties or their attorneys to supplement the [voir dire] examination by such further inquiry as it deems proper...." (emphasis added). While the district court in this case did not question the jurors regarding the article at issue, the court gave the customary admonition to the jurors not to speak among themselves prior to deliberations and to base their decision on evidence admitted into trial. In addition, the two-month trial was substantially completed when the article was published. Under these circumstances, we conclude that the district court did not abuse its discretion by refusing to conduct voir dire.
 
 B. THE ROBY TRIAL
 
 35
 We next review the alleged errors in the trial brought by the Roby plaintiffs. The appeal against plaintiff Roby was brought solely by defendant O & I ("defendant"). We address defendant's contentions in seriatim below.
 
 1. Sufficiency of the Evidence
 
 36
 Defendant contends that the district court erred in denying its motion for judgment notwithstanding the verdict. According to defendant, there was insufficient evidence that Roby's alleged exposure to defendant's product caused his injuries.
 
 
 37
 Roby testified at trial that he was exposed to defendant's asbestos-containing product, Kaylo, over a period of approximately six years. He had a total work history, however, of 34 years during which he was regularly exposed to asbestos. Roby's medical expert testified that all of Roby's exposures to asbestos over time must be considered causative of his condition. The expert did not specify that exposure to Kaylo was a substantial contributing cause of Roby's injuries. Defendant contends that generalized proof will not suffice to prove individual damages. Sterling v. Velsicol, 855 F.2d 1188 (6th Cir.1988). Moreover, when exposed to many products, a plaintiff must show that exposure to defendant's product was a substantial factor. Pang v. Minch, 53 Ohio St.3d 186, 559 N.E.2d 1313 (Ohio St.1990).
 
 
 38
 There was more than "generalized proof" presented in this case. There was direct evidence that Roby was exposed to defendant's product and that any such exposure contributed to his condition. In addition, the "substantial factor" test in Pang is inapplicable to this case. In Pang, the court considered the liability of several alleged tort-feasors where there were "independent concurring acts [which] caused distinct and separate injuries to the plaintiff or where some reasonable means of apportioning the damages [was] evident." Id. at 197-98. Injuries such as Roby's which arise from prolonged exposure to a substance are not "distinct and separate." Nor is its cause capable of being apportioned among the alleged tort-feasors. In light of the evidence in this case, we conclude that the the jury verdict was sufficiently supported.
 
 2. Punitive Damages
 
 39
 Defendant contends that the district court erred in permitting the jury to consider an award of punitive damages. The Ohio standard for punitive damages, as set forth in Preston v. Murty, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987), is that there must exist either: (1) a state of mind under which a person's conduct is characterized by hate, ill will or a spirit of revenge; or (2) a conscious disregard for the injured party's rights and safety such that the tort-feasor knew its actions had a great probability of causing substantial harm.
 
 
 40
 Roby asserts that there was substantial testimony that defendant knew about the probable hazards of exposure to asbestos. For example, in a letter dated March 12, 1943, to defendant's director of research, it was stated that Kaylo had the makings of "a first class hazard." There was another letter in November 1944 in which the director of one of defendant's laboratories was told that Kaylo constituted a hazard "either to employees engaged in the manufacture of it or to others in the use or installation of it." There were also tests which found "unmistakable evidence of asbestosis" in laboratory animals. There was additional evidence which, in total, suggested that defendant had knowledge of the hazards of asbestos exposure, yet permitted its continued use without warning to those exposed to the product. This evidence substantially supported a conclusion that defendant acted in conscious disregard of the injured parties' safety.
 
 
 41
 Nevertheless, defendant argues that due process prohibits the award of punitive damages in this case due to defendants' assessed and potential liability to hundreds of other parties against it. Essentially, defendant argues that the award of punitive damages in numerous cases arising from the same conduct results in overkill. Defendant states in its brief that "[a]t some point courts should cease punishing a defendant for the same mistake." In support of this proposition, defendant cites In re Federal Skywalk Cases, 680 F.2d 1175 (8th Cir.), cert. denied, 459 U.S. 988 (1982), which stated that "unlimited multiple punishment for the same act ... would violate the sense of 'fundamental fairness' that is essential to constitutional due process." Id. at 1188 (dissenting opinion).
 
 
 42
 As a threshold matter, defendant advanced the above argument from Federal Skywalk without disclosing that its position was taken from the dissenting opinion. Moreover, Federal Skywalk is inapplicable to this case. The issue of punitive damages in that case arose in the context of a challenge to certification of a class which sought punitive damages. The majority did not even consider the punitive damages issues in its ruling. To the extent that the issue of multiple punitive damages was even raised, the claim was based on Missouri law. Accordingly, there is no support for defendant's claim that the award of multiple punitive damages is fundamentally unfair and we reject this contention.
 
 
 43
 3. Consolidation of Cases, Substitution of Judges and Foreclosure of Discovery
 
 
 44
 Defendant argues that the district court abused its discretion by foreclosing discovery in this case. Defendant contends that the district court stayed all discovery "in terms of preparation for trial" for a period of time. Defendant admits that the court allowed discovery by interrogatories, the SPRINT interviews and the collection of medical records. Defendant suggests, however, that this was for the limited purpose of settlement discussions. Defendant also implies that since the district court did not announce that it would begin trial on June 5, 1990, until April 24, 1990, defendant had inadequate time to prepare for trial.
 
 
 45
 The district court's decision to initially limit discovery was not an abuse of discretion. Defendant's attempt to distinguish preparation for trial and preparation for settlement discussions is wholly without merit. The limited, although substantial, initial discovery was relevant for either proceeding. Moreover, the district court did eventually permit full discovery in this case for all parties. Therefore, there was no abuse of discretion by the "foreclosure" of discovery. We also reject defendant's contention that it was given inadequate notice of trial.
 
 
 46
 Defendant contends next that the district court abused its discretion in consolidating this case with the case against Solly during the first two weeks of trial. This claim is also meritless. As discussed above, this decision was within the discretion of the district court, and there appears to have been no abuse whatsoever in consolidating the Solly and Roby cases on the general issues addressed during the first two weeks of trial.
 
 
 47
 Defendant also argues that the district court abused its discretion by permitting Judge Dowd to sit in place of Judge Lambros for two days. As stated above, however, defendant failed to raise this issue at trial and may not do so on appeal.
 
 
 48
 4. "Denial" of Live Testimony by defendant's expert witness
 
 
 49
 One of defendant's witnesses, Dr. Stephen Ayers, was allegedly scheduled to testify on July 13, 1990, on the same day that plaintiff's expert testified. Dr. Ayer's was unable to testify on that date, however, because the district court held up his testimony until plaintiff's witness was done testifying. Defendant contends that the district court held up defendant's expert testimony in order to "punish" defendant for alleged improper and "hard ball" tactics by defendant. Defendant alleges that the district court so ruled with knowledge that Dr. Ayers was leaving the country the following week and was thereafter unavailable to testify. We do not believe, however, that the district court's decision to postpone the testimony of Dr. Ayers beyond July 13, 1990, was an abuse of discretion. The district court was under no obligation to postpone the testimony of plaintiff's witness in order to accomodate defendants. Moreover, the district court did admit the videotaped testimony of Dr. Ayers.
 
 
 50
 5. Exclusion of Superseding Causation Evidence
 
 
 51
 Defendant contends that the district court abused its discretion by excluding evidence that Roby's employer, B & O Railroad, was the superceding cause of Roby's injuries. Defendant desired to introduce evidence that B & O was a sophisticated user of asbestos-containing products and that B & O failed to take the proper precautions to prevent asbestos-related injuries. The district court denied the admission of any such evidence.
 
 
 52
 The factors generally used to evaluate the reasonableness of a supplier's reliance on a learned intermediary are as follows:
 
 
 53
 (1) the dangerous conditions of the product;
 
 
 54
 (2) the purpose for which the product is used;
 
 
 55
 (3) the form of any warnings given;
 
 
 56
 (4) the reliability of the third party as a conduit of necessary information about the product;
 
 
 57
 (5) the magnitude of the risk involved; and
 
 
 58
 (6) the burdens imposed on the supplier by requiring that he directly warn all users.
 
 
 59
 Adams v. Union Carbide, 737 F.2d 1453 (6th Cir.), cert. denied, 469 U.S. 1062 (1984).
 
 
 60
 In Adams, defendant Union Carbide supplied a toxic chemical to General Motors Corp., whose employees were exposed to the chemical's toxic vapors during their work at GM. The Court concluded that Union Carbide had fulfilled its duty to warn by supplying GM with detailed information about the chemical's hazards, providing information to be disseminated to GM's employees, and providing instructions to GM to limit exposure to the chemicals.
 
 
 61
 In this case, no warnings were given to B & O or provided for its employees by defendant. Therefore, it is irrelevant that defendant learned in hindsight that B & O may have been aware of a potential danger in exposure to defendant's product. Such alleged knowledge by B & O did not exonerate defendant of its duty to warn B & O and those employees exposed to Kaylo. The district court's conclusion to exclude this evidence was not an abuse of discretion.
 
 5. Admission of Hearsay Evidence
 
 62
 Defendant avers that the district court committed clear error in admitting evidence of summary depositions in lieu of live testimony of certain corporate officials during the "common issues" portion of the trial. Both parties were permitted to summarize those depositions which they wished to present, however, and the testimony was merely narrative. Therefore, the ruling to admit the summary depositions was not clear error.
 
 6. Jury Instructions
 
 63
 Defendant contends that the district court gave erroneous or insufficient jury instructions as follows: (1) the court gave an insufficient explanation of causation; (2) the court applied the incorrect test regarding the award of punitive damages; (3) the court failed to explain that compliance with governmental standards is strong evidence that a product is not defective; and (4) the court gave insufficient instructions regarding the adequacy of warnings.
 
 
 64
 First, defendant alleges that the district court erroneously characterized the elements that Roby was required to establish regarding proximate cause in its charge to the jury. Defendant acknowledges, however, that the court later gave a corrected charge. Moreover, the verdict forms contained the correct charge. Therefore, there was no error in the jury charge on proximate cause.
 
 
 65
 Defendant also challenges the jury charge regarding punitive damages. The district court instructed that:
 
 
 66
 Punitive damages may be awarded where a manufacturer's testing, examination and procedure for a product are so inadequate as to manifest a flagrant indifference as to the probability that the product might expose consumers to unreasonable risks of harm.
 
 
 67
 Defendant contends that the court should have instructed the jury pursuant to Preston, which mandates a showing of a "conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Preston, 32 Ohio St.3d at 336.
 
 
 68
 We do not believe that the standard recited by the district court was substantially different from the Preston standard. Therefore, we conclude that any error in the charge was harmless.
 
 
 69
 Defendant contends that the district court gave an erroneous instruction on the duty to warn. According to defendant, the district court set forth the elements for the duty to warn under the strict liability standard provided in Section 402A of the Restatement of Torts 2d. The district court directed that:
 
 
 70
 [I]t is the law that one who sells any product in a defective condition, unreasonably dangerous to the user or the consumer, is subject to liability for physical harm thereby caused to the ultimate user or consumer if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 
 
 71
 Defendant contends that this was an improper instruction under Ohio law, which applies a negligence standard to the duty to warn.
 
 
 72
 Defendant avers that Crislip v. TCH Liquidating Co., 52 Ohio St.3d 251, 556 N.E.2d 1177 (1990), provided that the same standard for the duty to warn is applied in negligence and strict liability cases. The court stated that:
 
 
 73
 Under either a negligence or strict liability theory, the important factors for the jury to consider were whether the defendant knew or should have known of the danger and whether the warning allowed the consumer to use the product safely. In a products liability case where a claimant seeks recovery for failure to warn or warn adequately, it must be proven that the manufacturer knew, or should have known, in the exercise of ordinary care, of the risk or hazard about which it failed to warn. Further, there will be no liability unless it be shown that the manufacturer failed to take the precautions that a reasonable person would take in presenting the product to the public. Thus, the standard imposed upon the defendant in a strict liability claim grounded upon an inadequate warning is the same as that imposed in a negligence claim based upon inadequate warning.
 
 
 74
 Id. at 257. According to defendant, the district court's failure to give an instruction consistent with Crislip was error.
 
 
 75
 The distinction urged by defendant is indeed an important one. Based on the district court's instruction, the jury need only have determined that defendant's product was defective and defendant failed to warn. Under the standard enunciated in Crislip, there must be proof that the defendant knew or should have known of the alleged danger of its product and yet failed to warn its users.
 
 
 76
 In the context of this entire case, however, we do not believe that the proper instruction would have altered the jury's verdict. As noted above, in order to grant punitive damages, the jury found that defendant acted with "flagrant indifference as to the probability that its product might expose [Roby] to unreasonable risk of harm." We believe that this finding supports an inference that the jury would have found that defendant knew of or should have known the risk or hazard of exposing workers to asbestos. Therefore, we hold that the improper instruction was harmless error.
 
 
 77
 Defendant also contends that the district court erroneously instructed the jury on the issue of medical causation; i.e., whether asbestos dust from defendant's product caused his cancer. The district court declined to instruct, as requested by defendant, that "if the injuries complained of might well have resulted from any one or several causes, plaintiffs must prove evidence which will exclude the effectiveness of those causes for which a defendant is not legally responsible." Defendant concludes that the omission of this explanation "left the jury with the perception that the evidence of exposure of other asbestos-containing products was not relevant to plaintiff's case." We find no merit in this argument.
 
 
 78
 The district court in this case did instruct the jury on causation. In assessing causation, the jury necessarily considered whether there were products other than defendant's product which caused Roby's injuries. This determination was implicit, and the district court's refusal to specify the relevance of other causes in assessing whether defendant's product caused Roby's injury was not erroneous.
 
 
 79
 Finally, defendant contends that the district court erred by not instructing the jury that if defendant complied with government safety standards, then that was "strong and substantial evidence" that its product was not defective. Defendant presented evidence that during the relevant time period medical science believed that there was a safe level of exposure to asbestos. Testimony established that Ohio had implemented threshold limit values for asbestos and the American Conference of Governmental Industrial Hygienists had promulgated a safe exposure standard for asbestos, with which defendant complied.
 
 
 80
 In a products liability case involving the applicability of the Occupational Safety and Health Act ("OSHA"), this Court held that the trial court's refusal to admit OSHA standards was appropriate. Bailey v. V & O Press Co., Inc., 770 F.2d 601 (6th Cir.1985). Bailey suggests that it is not always necessary to consider compliance with government standards in determining liability for a defendant's product. Moreover, in this case, there was a dispute as to whether defendant even complied with the applicable government standards by measuring the levels for asbestos at its commercial sites or specifically at Roby's place of employment. Therefore, the district court's failure to give the requested instruction was, at most, harmless error.
 
 III.
 
 81
 For the above stated reasons, we AFFIRM the jury verdicts and the judgments by the Honorable Thomas D. Lambros and the Honorable David D. Dowd, Jr., United States District Judges for the Northern District of Ohio.
 
 
 
 *
 The Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Donald Solly died during the pendency of this action and Frances Solly continued the action as executrix
 
 
 [2]
 The jury ultimately found that Solly's injury developed over time and at all of the defendants' job sites
 
 
 [3]
 Fed.R.Evid. 803(24) provides for the admission of hearsay evidence that satisfies the following test:
 A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable effort; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.