MORGAN ET AL., APPELLANTS, *v.* BIRO MANUFACTURING COMPANY, INC., APPELLEE.

[Cite as Morgan *v.* Biro Mfg. Co. (1984), 15 Ohio St. 3d 339.]

(No. 84-518—Decided December 31, 1984.)

*Michael F. Colley Co., L.P.A., Mr. Michael F. Colley* and *Mr. Dana A. Deshler, Jr.,* for appellant Morgan.

*Messrs. Knepper, White, Arter & Hadden, Mr. Louis E. Gerber* and *Ms. Lise K. Jacobson,* for appellee.

*Per Curiam.* Through this appeal, the court is confronted with the standard choice-of-law dilemma. We must initially determine whether Kentucky or Ohio law should be applied to the facts as presented. Then we must proceed to the merits of appellant's case under the appropriate state standards.

## I

The principles of choice-of-law have been subject to much reevaluation in many jurisdictions due to the judiciary's dissatisfaction with the absolute nature of the traditional rules. This flurry of activity has brought about inconsistent theories which oftentimes lead to unjust results. Many problems still plague this area of the law and Ohio has not been immune from them.[1]

The national trend in choice-of-law litigation is to replace the traditional rules with a more flexible case-by-case approach. This approach combines some of the more well-reasoned traditional axioms with an interest analysis of the states involved in the litigation. The task is therefore delegated to the court to weigh each factor in light of the circumstances of the particular case.

In the area of tort law prior to 1971, it is well-established in this state that the substantive law of the place where the injury occurred was controlling under the rule of *lex loci delicti. Freas* v. *Sullivan* (1936), 130 Ohio St. 486 [5 O.O. 139]; *Collins* v. *McClure* (1944), 143 Ohio St. 569 [28 O.O. 482]; *Ellis* v. *Garwood* (1958), 168 Ohio St. 241 [6 O.O.2d 22]; *Lyons* v. *Lyons* (1965), 2 Ohio St. 2d 243 [31 O.O.2d 504]. The application of the rule was automatic without reference to the facts of the case. However, in *Fox* v. *Morrison Motor Freight* (1971), 25 Ohio St. 2d 193 [54 O.O.2d 301], this court made its first move to join the national trend.

In writing for a majority of the court in *Fox,* Justice Duncan stated

---

[1] For a critical review of Ohio law, see Note (1983), 44 Ohio St. L.J. 239.

that the rule of *lex loci delicti* was no longer to be utilized to automatically determine tort cases involving choice-of-law issues. Justice Duncan further noted that a trial court must weigh the substantial governmental interests of the states concerned in order to reach a fair and equitable result. The majority opinion made no indication, however, as to whether the traditional rule was a factor to be considered by the trial court.

The continued viability of *lex loci delicti* was expressed by Justice Leach in his concurring opinion in *Fox* which was joined by three of his brethren. It was the view of Justice Leach that the majority opinion was creating an exception to the traditional rule, not the abolishment thereof.

The confusion which resulted from the *Fox* opinions was partially alleviated in *Schiltz* v. *Meyer* (1972), 29 Ohio St. 2d 169 [58 O.O.2d 391]. A unanimous court reaffirmed the view that *lex loci delicti* would not be automatically dispositive of tort actions involving choice-of-law queries. Although Ohio law was applied, it was held that courts should no longer look *solely* to the traditional doctrine in ascertaining which state's law should prevail. Nonetheless, the court did consider, in part, the policy of *lex loci delicti* in making its determination.

Finally, our most recent case dealing with the issue is that of *Moats* v. *Metropolitan Bank of Lima* (1974), 40 Ohio St. 2d 47 [69 O.O.2d 323]. The suit therein arose when two Ohio residents were killed in an airplane crash in Pennsylvania. The plane was owned by an Ohio corporation and hangared in Ohio. In addition, the representatives of each estate resided in Ohio.

Again, a unanimous court cited *Fox, supra,* and *Schiltz, supra,* in support of its ruling not to automatically apply *lex loci delicti.* The court then proceeded to analyze each state's interests in the case. It was found that the state of Pennsylvania had little interest because all of the contacts in the litigation were in Ohio with the exception of the crash site. By employing an interest analysis approach, the court applied Ohio law in holding that Pennsylvania's interests could not outweigh Ohio's concerns.

Based on this line of authority, it is apparent that the traditional rule of *lex loci delicti* is still viable in Ohio, but is no longer used to automatically determine the prevailing state law. Other interests of the states involved within the controversy must be thoroughly analyzed. Thus, the query becomes what specific factors should our courts consider in making an equitable choice-of-law determination.

A review of relevant authorities indicates three modern methodologies to the perplexity surrounding choice-of-law: the Restatement of the Law of Conflicts approach, Currie's interest analysis approach,[2] and Leflar's choice-influencing approach.[3] We hereby adopt the theory stated in the

---

[2] See Currie, Selected Essays on the Conflict of Laws (1963).

[3] See Leflar, Choice-Influencing Considerations in Conflicts Law (1966), 41 N. Y. U. L. Rev. 267.

Restatement of the Law of Conflicts, as it is more reflective of our past decisions and also provides sufficient guidelines for future litigation.

When confronted with a choice-of-law issue in a tort action under the Restatement of the Law of Conflicts view, analysis must begin with Section 146.[4] Pursuant to this section, a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit. To determine the state with the most significant relationship, a court must then proceed to consider the general principles set forth in Section 145.[5] The factors within this section are: (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6[6] which the court may deem relevant to the litigation. All of these factors are to be evaluated according to their relative importance to the case.

Turning to the facts of this case, it is clear that the state of Kentucky

---

[4] Section 146 of 1 Restatement of the Law 2d, Conflict of Laws (1971) 430, provides:

"In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and to the parties, in which event the local law of the other state will be applied."

[5] Section 145 of 1 Restatement of the Law 2d, Conflict of Laws 414, states:

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence of the parties under the principles stated in § 6.

"(2) Contracts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place where the injury occurred,

"(b) the place where the conduct causing the injury occurred,

"(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

"(d) the place where the relationship, if any, between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

[6] Section 6 of 1 Restatement of the Law 2d, Conflict of Laws 10, provides as follows:

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of law to be applied."

has the most significant relationship to the parties and events herein. The courts below found that appellant's injury took place in Kentucky and that he was a resident thereof at the time of his accident. Further, appellant Morgan was employed at a supermarket in Kentucky and received workers' compensation benefits under Kentucky law. Finally, the inspection of the meat grinder's condition was the responsibility and within the exclusive interest of the state of Kentucky.

The state of Ohio has only two contacts of any significance to this litigation. First, appellee is incorporated under the laws of this state. Second, the product was manufactured in Ohio. It is without question that our state has an important policy objective in deterring the manufacture and sale of defective products. See *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 320-321 [4 O.O.3d 466]. However, the mere fact that twenty-five years ago appellee manufactured a commercial meat grinder in Ohio and subsequently sold it to a Tennessee corporation with a protective guard in place which, in turn, was removed and a Kentucky resident was injured thereby, does not justify an application of Ohio law. Consequently, we hold that the trial court properly applied Kentucky law in the case *sub judice*.

## II

Under Kentucky law, appellant argues that summary judgment was improper in that genuine issues remained as to appellee's foreseeability that the protective guard would be removed from the grinder and its failure to warn of the possible danger.

Summary judgment is proper pursuant to Kentucky law when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Roberts* v. *Davis* (Ky. 1968), 422 S.W. 2d 890; *Richmond* v. *Louisville & Jefferson County Metro. Sewer Dist.* (Ky. App. 1978), 572 S.W. 2d 601.

The testimony of Vincent Biro, president of appellee, established that his corporation did not learn of purchasers' removing the protective guard from this type of meat grinder until 1966. This knowledge came seven years after the manufacture and sale of the grinder in question.

The Products Liability Act of 1978 adopted by the Kentucky legislature recognized certain presumptions, one of which is relevant to this case. The presumption is that a product is not defective if the injury occurred more than five years after its initial sale, or more than eight years after its date of manufacture. Ky. Rev. Stat. 411.310(1) (1978).[7] In

---

[7] Ky. Rev. Stat. 411.310 (1978) states:

"* * * (1) in any product liability action, it shall be presumed, until rebutted by a preponderance of the evidence to the contrary, that the subject product was not defective if the injury, death or property damage occurred either more than five (5) years after the date of sale to the first consumer or more than eight (8) years after the date of manufacture.

"(2) In any product liability action, it shall be presumed, until rebutted by a

addition, the act provides a limited circumstance under which a manufacturer is liable. Ky. Rev. Stat. 411.320 states, in part, that "a manufacturer shall be liable only for the personal injury * * * that would have occurred if the product had been used in its original, unaltered and unmodified condition."

Based on these statutory provisions, we conclude that appellant is precluded from recovery. We can find no evidence in the record which would rebut the statutory provisions. Our conclusion is also supported by a Kentucky appellate court decision on virtually identical facts as those before us. See *Head* v. *Biro Manufacturing Co.* (Feb. 5, 1982), Ky. App. No. 81-CA-1263-MR, unreported, review denied (April 13, 1982), Ky. Sup. Ct. No. 82-SC-126-D, unreported.

Accordingly, we affirm the judgment of the court of appeals on both issues presented.

*Judgment affirmed.*

W. Brown, Sweeney, Locher and Holmes, JJ., concur.

Celebrezze, C.J., C. Brown and J. P. Celebrezze, JJ., dissent.

Clifford F. Brown, J., dissenting. While I concur in the adoption of the Restatement of Conflict of Laws as the standard for determining choice of law questions, I dissent from the application of that standard to this case.

The general principles set forth in Section 145 of 1 Restatement of the Law 2d, Conflict of Laws (1969) 414, require the application of Ohio law, not Kentucky law. The accident involved in this case is the alleged result of a design defect. While the accident location is Kentucky and the appellant injured is also a Kentucky resident, I believe all other factors which must be considered weigh in favor of the application of Ohio law.

Section 145 also requires a court to examine, *inter alia,* the following factors: the place where the conduct causing the injury occurred; the place of incorporation of the defendant and place of business of the parties; and, most importantly, any factors enumerated under Section 6 of 1 Restatement of the Law 2d, Conflict of Laws, which the court may deem relevant to the litigation. As to the first two factors mentioned above, Ohio has the most significant contacts. The conduct causing an injury in any design defect or products liability case is at the site of manufacture of the product. See *Temple* v. *Wean United Inc.* (1977), 50 Ohio St. 2d 317 [4 O.O.3d 466]. The appellee manufacturer was and is an Ohio corporation with its

---

preponderance of the evidence to the contrary, that the product was not defective if the design, methods of manufacture, and testing conformed to the generally recognized and prevailing standards or the state of the art in existence at the time the design was prepared, and the product was manufactured."

principal place of business in Ottawa County, Ohio. Appellee manufactured the grinder in Ohio.

The above factors, at best, create a true balance against the competing interest of the commonwealth of Kentucky in the disposition of this case. However, examination of the factors found in Section 6 tips the scales to the state of Ohio. Section 6 of the Restatement of Conflict of Laws 2d set forth numerous relevant factors to be looked at by the courts along with those found in Section 145. Careful consideration of all these factors clearly directs a court to apply Ohio law to this case.

The relevant factors set forth in Section 6, *supra,* at 10, are as follows:

"(2)   * * * the factors relevant to the choice of the applicable rule of law include

"(a)  the needs of the interstate and international systems,

"(b)  the relevant policies of the forum,

"(c)  the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d)  the protection of justified expectations,

"(e)  the basic policies underlying the particular field of law,

"(f)   certainty, predictability and uniformity of result, and

"(g)  ease in the determination and application of law to be applied."

Weighing all these factors listed in Section 6, I find the proper choice of law in this case to be Ohio.

Public policy dictates that a manufacturer which is producing in, and receiving all the benefits and protections of, the state of Ohio should also be held to the standards of care of this state. The appellee in this case produced the product which caused this injury in Ohio and sold it from Ohio. Therefore, the company should be bound by Ohio law for any design defect in that product.

The foregoing rationale is also consistent with today's decision in *Gries Sports Enterprises* v. *Modell* (1984), 15 Ohio St. 3d 284, and with *Schulke Radio Productions, Ltd.* v. *Midwestern Broadcasting Co.* (1983), 6 Ohio St. 3d 436.

Finding that the relevant factors set forth in the Restatement of Conflict of Laws 2d require application of Ohio law, I would reverse the court of appeals.

CELEBREZZE, C.J., and J. P. CELEBREZZE, J., concur in the foregoing dissenting opinion.