NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant,

v.

BLACK et al., Appellees.

[Cite as *Nationwide Mut. Ins. Co. v. Black* (1995), 102 Ohio App.3d 235.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 16906.

Decided March 29, 1995.

*Stephen P. Griffin* and *Fred R. Scott,* for appellant.

*David W. Hilkert,* for appellees.

---

BAIRD, Presiding Judge.

Plaintiff-appellant, Nationwide Mutual Insurance Company ("Nationwide"), appeals the declaratory judgment of the Summit County Common Pleas Court determining that the law of the province of Ontario, Canada, applies to a controversy between Nationwide and defendants-appellees, Ruby A. Black and State Farm Insurance Company ("State Farm"). We affirm.

On September 18, 1991, Kay and William Black, insureds of Nationwide, were injured in Ontario, Canada, while they were passengers in an automobile owned and driven by Ruby Black, an insured of State Farm. Grace Bell, another passenger in Ruby Black's car, was also injured. The driver of the car with which Ruby Black collided was Michael Fuller, a resident of Ontario. Neither Grace Bell nor Michael Fuller is a party to this action.

Kay and William Black presented claims for their injuries to State Farm, which denied them. Thereafter, Kay and William Black submitted their claims to Nationwide, seeking payment under the uninsured motorists coverage set forth in their policy of insurance with Nationwide. Nationwide paid their claims.

On September 17, 1993, Kay Black, William Black, and Nationwide filed a complaint in the Summit County Common Pleas Court against Ruby Black and State Farm. Kay Black and William Black sought damages for their injuries, alleging that Ruby Black's negligent operation of the automobile in which they were injured caused their injuries. Nationwide, Kay Black, and William Black also sought a declaratory judgment pursuant to Civ.R. 57 and R.C. Chapter 2721. Kay Black and William Black subsequently settled their claims and were dismissed from the action.

In the remaining claim for declaratory judgment, Nationwide stated that the province of Ontario, where the collision occurred, has a comprehensive no-fault insurance law, which provides that a claimant must look first to his own insurer for payment of medical expenses and lost wages but may pursue the tortfeasor, or the tortfeasor's insurer, for special damages should a serious and permanent physical injury be involved. Nationwide sought a determination either (1) that Ohio law governed the controversy, thereby requiring State Farm to indemnify its insured, Ruby Black, for all damages, or, in the alternative, (2) that (a) Kay Black suffered a "permanent serious impairment" as a result of the accident, (b) Ontario law requires that State Farm pay Kay Black's general and special damages, (c) Ontario law holds Nationwide responsible only for Kay Black's

medical and rehabilitation expenses, and (d) Nationwide is entitled to judgment against Ruby Black and State Farm for any payments made by Nationwide to Kay and William Black, plus costs.

The court and the parties agreed to separately determine the issue of whether Ohio or Ontario law should be applied to the controversy. Following submission by the parties of stipulated statements of fact, the trial court ordered that the law of Ontario applied. It is from this order that Nationwide appeals, asserting a single assignment of error:

"The trial court erred in holding that Ontario law governs this case."

## A

In determining that Ontario law applied in the case *sub judice*, the trial court noted that, although Nationwide and State Farm are corporations registered to do business in Ohio, and Kay, William, and Ruby Black are Ohio residents, the third passenger in Ruby Black's car was from Pennsylvania, and the driver of the car with which Ruby Black collided was from Ontario. Although the Pennsylvania passenger and the Ontario driver were not parties to the lawsuit before it, the court considered them in its analysis of whether Ontario law or Ohio law applied to the controversy.

The court concluded that Ohio did not have a significantly greater interest in having its law applied, rather than that of Ontario, because (1) the injuries, and conduct causing the injuries, occurred in Ontario; (2) the domicil, residence, place of incorporation, and place of business of the parties favored neither Ohio nor Ontario; and (3) there was no one place where the relationship, if any, between the parties was centered.

Nationwide challenges the trial court's analysis, arguing that it erroneously set forth and incorrectly applied the principles set forth in the Restatement of the Law 2d, Conflict of Laws (1971), in declaring Ontario law to be applicable.

## B

 Principles of tort law govern a declaratory judgment action instituted by an insurer [1] under the facts and circumstances present here. *Nationwide Ins.*

---

1. Because the underlying cause of action in this case is one for personal injuries to Kay and William Black as a result of a motor vehicle accident, and because Nationwide paid their claims pursuant to its policy of insurance with them, Nationwide became subrogated to their rights and may assert whatever claims they may have against Ruby Black and State Farm. *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 29, 521 N.E.2d 447, 454, overruled on other grounds, *McDonald v. Republic–Franklin Ins. Co.* (1988), 45 Ohio St.3d 27, 543 N.E.2d 456.

*Co. v. Fryer* (1990), 62 Ohio App.3d 905, 908–909, 577 N.E.2d 746, 748–749. Pursuant to Ohio law and to applicable principles of tort law, a determination of which state's [2] law applies to a controversy is to be made on a case-by-case basis. *Morgan v. Biro Mfg. Co.* (1984), 15 Ohio St.3d 339, 340, 15 OBR 463, 464, 474 N.E.2d 286, 287. In making this decision, consideration is to be given to 1 Restatement of the Law 2d, Conflict of Laws (1971) ("Restatement") 10, 414, and 430, Sections 6, 145, and 146. *Id.* at 341–342, 15 OBR at 464–466, 474 N.E.2d at 288–289.

Until 1971, Ohio courts applied the rule of *lex loci delicti* to choice-of-law disputes in personal injury actions. Under that rule, the substantive law of the place where the injury occurred automatically governed the case. *Lyons v. Lyons* (1965), 2 Ohio St.2d 243, 244, 31 O.O.2d 504, 505, 208 N.E.2d 533, 535. After gradually modifying the automatic application of *lex loci delicti*, the Supreme Court of Ohio, in *Morgan*, 15 Ohio St.3d at 341, 15 OBR at 464–465, 474 N.E.2d at 288, determined that *lex loci delicti* was still viable in Ohio "but it is no longer used to automatically determine the prevailing state law. Other interests of the states involved within the controversy must be thoroughly analyzed." The court concluded that choice-of-law issues in tort actions were to begin with Section 146 of the Restatement:

"Pursuant to this section, a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit. To determine the state with the most significant relationship, a court must then proceed to consider the general principles set forth in Section 145. The factors within this section are: (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicil, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6 [3] which the court may deem relevant to the litigation.

---

2. As used in the Restatement of the Law, the word "state" denotes "a territorial unit with a distinct general body of law." 1 Restatement of the Law 2d, Conflict of Laws (1971) 6, Section 3.

3. "Section 6 of 1 Restatement of the Law 2d, Conflict of Laws 10, provides as follows:
 " '(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
 " '(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
 " '(a) the needs of the interstate and international systems,
 " '(b) the relevant policies of the forum,
 " '(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
 " '(d) the protection of justified expectations,
 " '(e) the basic policies underlying the particular field of law,

All of these factors are to be evaluated according to their relative importance to the case." (Footnote omitted; footnote renumbered.) *Id.* at 342, 15 OBR at 465–466, 474 N.E.2d at 289.

■ In accordance with *Morgan* and pursuant to Section 146 of the Restatement, Ontario, as the place where the injury occurred, determines the rights and liabilities of the parties, unless Ohio has a more significant relationship to the occurrence and the parties. In order to determine whether Ohio has a more significant relationship to this occurrence and the parties, we must look to the five factors set forth in *Morgan.*

With respect to two of the factors, domicil and place of relationship of parties, the trial court found that, because of the diversity of the "parties'" domiciles, consideration of these factors favored neither Ontario nor Ohio. In reaching its conclusion, however, the trial court stated that it was "unreasonable to suggest that only parties to a lawsuit are to be considered in a conflict-of-laws analysis since courts could reach completely different results depending on where cases are filed." Since one of the passengers in Ruby Black's automobile was domiciled in Pennsylvania and since the driver of the other automobile was domiciled in Ontario, the court determined that the "parties" had no common domicil in, or relationship to, either Ohio or Ontario.

■ The Restatement, however, requires the court to consider only the parties to the lawsuit. Although the term "parties" is not defined in the Restatement, several sections of the Restatement make it clear that the term "parties" is intended to mean "parties to a proceeding," and not all of the individuals involved in the occurrence that precipitated legal action, unless all such individuals are parties to such legal action. See, *e.g.,* 1 Restatement at 355 and 369, Sections 125 and 134. Moreover, the term "parties" is generally understood to mean parties to a lawsuit:

" 'Party' is a technical word having a precise meaning in legal parlance; it refers to those by or against whom a legal suit is brought, whether in law or in equity, the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons; all others who may be affected by the suit, indirectly or consequently, are persons interested but not parties." Black's Law Dictionary (6 Ed.1990) 1122.

■ In view of the foregoing, it was error for the trial court to include the Pennsylvania passenger and the Ontario driver in its analysis of the third and

---

" '(f) certainty, predictability and uniformity of result, and
" '(g) ease in the determination and application of law to be applied.' "

fourth factors of Section 145 of the Restatement. However, the error was harmless under the facts of this case.

The Restatement provides that, where the domicils and places of business of all parties are in a single state, that nexus is an important factor to be considered in determining the applicable law. 1 Restatement at 421, Section 145. If a tortfeasor's conduct and the resultant injury occur in such a state, that state likely will be the state of the applicable law. *Id.* However, where, as here, fewer than all of the parties are domiciled in a single state,[4] the weight to be applied to this factor is not as great. Moreover, where personal injury is involved, the place of injury remains of particular significance. 1 Restatement at 423, Section 145, Comment *f.*

With respect to two of the other factors set forth in Section 145 of the Restatement, place of injury and place of conduct causing the injury, the trial court found that those factors favored Ontario. Nationwide argues that the occurrence of the conduct and injury in Ontario was merely fortuitous, however, and should not be afforded great weight:

"[T]he circumstances under which a guest passenger has a right of action against the driver of an automobile for injuries suffered as a result of the latter's negligence may be determined by the local law of their common domicil, if at least this is the state from which they departed on their trip and that to which they intended to return, rather than by the local law of the state where the injury occurred." Restatement at 418, Section 145, Comment *d.*

"Situations do arise, however, where the place of injury will not play an important role in the selection of the state of the applicable law. This will be so, for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties * * *." Restatement at 419, Section 145, Comment *e.*

"A possible example is where the plaintiff, who is domiciled in state X, purchases a ticket in X from the defendant airline, which is incorporated and has its principal place of business in X, for transportation from one point in state X to another point in state X. A straight line between these two points runs for a short distance over the territory of state Y. While over state Y, the pilot commits an act of negligence which causes the plane to lose an engine and the plaintiff suffers severe fright and shock as a result. The plane does not crash and continues safely to its destination. Here the relationship between the parties is centered in X and both are far more closely related to X than to Y. Even though Y is the state of both conduct and injury, its relationship to the

---

4. Of the two corporations that are parties to this lawsuit, only Nationwide is an Ohio corporation.

occurrence and the parties is insubstantial. X may therefore be the state of most significant relationship * * *." Restatement at 431, Section 146, Comment *d.*

Unlike the example set forth in Comment *d,* there is no evidence in the record that the Blacks momentarily strayed into Ontario, en route between two distinct points in Ohio, when the injuries occurred. Moreover, not all the parties to this action have the same relationship to Ohio as that set forth in Comment *d* to Section 146. State Farm is not a corporation organized under the laws of Ohio. The stipulated facts merely state that both Nationwide and State Farm are licensed to do business in Ohio, as they are likely licensed in other states as well.

In *Kurent v. Farmers Ins. of Columbus, Inc.* (1991), 62 Ohio St.3d 242, 247, 581 N.E.2d 533, 537, the Supreme Court of Ohio found that the interests of an Ohio couple, injured by a Michigan driver in a collision in Michigan, were not "sufficient to override the presumption that the place where the injury occurred determines the rights and liabilities of the parties." The Michigan tortfeasor was insured by a Michigan company, and, pursuant to Michigan's no-fault insurance laws, the amount of the couple's recovery was limited because they failed to show noneconomic damage beyond a threshold level set by the state of Michigan. As a result, the couple sought recovery from their Ohio insurer under the uninsured motorists provision of their policy and pursuant to Ohio law. In finding that Michigan law applied, the court's decision emphasized the difficulty inherent in overcoming the presumption that the law of the place of the injury controls:

"Michigan law determines Karczewski's legal liability to the Kurents. He is a Michigan resident and the accident occurred in Michigan. A motorist traveling in Michigan accepts Michigan law as it pertains to accidents occurring in Michigan. That motorist does not have the option, for example, of claiming that Ohio's speed limit or traffic laws govern simply because the motorist resides in Ohio. The notion that Ohio law somehow controls the amount of damages flowing from torts committed on Michigan highways is akin to a contention that a Michigan resident who commits murder in Ohio is exempt from the death penalty because Michigan does not recognize capital punishment." *Id.* at 246, 581 N.E.2d at 536.

Although *Morgan* permits a court to consider, as a fifth factor, those considerations set forth in Section 6 of the Restatement that it deems relevant, those considerations largely require a weighing of the various policy interests involved. In the case *sub judice,* Ontario could likely advance as many policy reasons for its no-fault insurance law as Ohio could for its fault-based system. Essentially, these considerations offset one another. Even when applying the law of another state would be contrary to the public policy of Ohio, Ohio law is not to be applied unless Ohio has a significantly greater interest in having its law applied. *Sekeres v. Arbaugh* (1987), 31 Ohio St.3d 24, 26, 31 OBR 75, 76–77, 508 N.E.2d 941, 943.

Although the trial court found that one of the Section 6 factors, "certainty, predictability and uniformity of result," weighed in favor of Ontario, based in part on its consideration of the Pennsylvania passenger and the Ontario driver as "parties," exclusion of them as "parties" does not change the result here. Two of the factors set forth in Section 145 of the Restatement, place of injury and place of causation of injury, squarely support the application of Ontario law. The two factors relative to domicil and relationship of the parties weigh in support of Ohio law but are not unequivocal. The final factor set forth in *Morgan*, the Section 6 considerations, can be argued in favor of either Ontario or Ohio.

Accordingly, because the presumption that Ontario law controls has not been overcome by a showing that Ohio has a more significant relationship to the case *sub judice* than Ontario, the decision of the trial court is affirmed.

*Judgment affirmed.*

DICKINSON and SLABY, JJ., concur.