PROGRESSIVE INSURANCE COMPANY, Appellee,

v.

STEWART, Appellant; The Cincinnati Insurance Companies, Appellee.

[Cite as *Progressive Ins. Co. v. Stewart* (1999), 140 Ohio App.3d 543.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–98–1250.

Decided June 11, 1999.

*Jones & Bahret Co., L.P.A.,* and *Keith J. Watkins,* for appellee Progressive Insurance Company.

*Walter J. Skotynsky,* for appellant.

*Stephen C. Roach,* for appellee The Cincinnati Insurance Companies.

SHERCK, Judge.

This is an appeal from a summary judgment granted by the Lucas County Court of Common Pleas. It involves a declaratory judgment action brought by two Ohio insurers who sought to deny underinsured motorist benefits to an insured seriously injured in an out-of-state automobile collision. Because we conclude that this action should have been governed by the laws of the state of Mississippi, we reverse and remand for further consideration.

In 1996, appellant, Michael C. Stewart, then a Toledo, Ohio resident, was injured in an automobile accident that occurred in Biloxi, Mississippi. After the Mississippi tortfeasor settled with appellant for the $50,000 limit of his insurance coverage, appellant sought underinsured motorist coverage from his own insurers, appellees Progressive Insurance Company ("Progressive") and The Cincinnati Insurance Companies ("Cincinnati").

Appellant's maximum uninsured/underinsured motorist coverage under his Progressive and Cincinnati policies were $25,000 and $50,000 respectively. Both policies contained antistacking clauses and provided for a setoff from other insurance against policy limits. Both policies contained provisions to conform out-of-state coverage to the minimum requirements of the host state.

In 1997, appellee Progressive instituted the suit underlying this appeal. Progressive sought a declaration that it owed appellant no uninsured/underinsured motorist coverage under the terms of its policy. Appellant countersued for coverage and filed a third-party complaint against appellee Cincinnati, seeking coverage under that policy. Appellant also alleged bad faith by both appellees.

Following discovery, all parties moved for summary judgment. The trial court, applying Ohio contract law to the policies, determined that the setoff provisions were in conformity with R.C. 3937.18 and precluded appellant from receiving more than the $50,000 already paid by the tortfeasor. On this conclusion, the court granted appellees' summary judgment motions.

Appellant now brings this appeal, setting forth the following single assignment of error:

"The trial court erred in granting summary judgment in favor of plaintiff/appellee, Progressive Insurance Company and third party defendant/appellee, The Cincinnati Insurance Companies."

On review, appellate courts employ the same standard for summary judgment as trial courts. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. The motion may be granted only when it is demonstrated "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that

reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 67, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(E).

The facts of this matter are undisputed. The question is one of law. The trial court concluded that Ohio contract law controlled this transaction and that the setoff provision of both insurance policies were valid, precluding appellant from recovering compensation for his injuries in excess of his uninsured/underinsured motorist limits.

In the trial court and here, appellant argued that this claim should be governed by Mississippi law, which provides that uninsured motorist setoffs be against damages rather than policy limits.[1] Appellant submits that because this was an accident which occurred in Mississippi, involving a Mississippi tortfeasor, pursuant to *Kurent v. Farmers Ins. of Columbus* (1991), 62 Ohio St.3d 242, 581 N.E.2d 533, and this court's *Rixey v. Nationwide Mut. Ins. Co.* (Feb. 21, 1992), Lucas App. No. L–91–064, unreported, 1992 WL 32004, Mississippi law should apply. The outcome here is governed by a conflict-of-laws analysis.

Ohio has adopted both Section 188 of 1 Restatement of the Law 2d, Conflict of Laws (1971) 575, see *Nationwide Mut. Ins. Co. v. Ferrin* (1986), 21 Ohio St.3d 43, 21 OBR 328, 487 N.E.2d 568, and Sections 145 and 146 of the Restatement at 430. See *Morgan v. Biro Mfg. Co.* (1984), 15 Ohio St.3d 339, 15 OBR 463, 474 N.E.2d 286. The former sets forth the analytical structure to be utilized in resolving a conflict of law concerning a contract dispute and gives great weight to the place of contracting and the domicile of the contracting parties:

"§ 188. Law governing in Absence of Effective Choice by the Parties

"(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties * * *.

"(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account * * * include:

"(a) the place of contracting,

"(b) the place of negotiation of the contract,

"(c) the place of performance,

---

1. Appellees protest that this is not the Mississippi standard, but the trial court never reached the issue. Therefore, for purposes of appeal, we must assume that appellant is correct in this assertion.

"(d) the location of the subject matter of the contract, and

"(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

The latter provides a method of resolving conflicts of law in a matter sounding in tort and creates a presumption that the law of the place of the injury controls unless another jurisdiction has more significant relationship to the lawsuit. *Morgan* at 342, 15 OBR at 465–466, 474 N.E.2d at 288–289:

"§ 145. The General Principle

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties * * *.

"(2) Contacts to be taken into account * * * to determine the law applicable to an issue include:

"(a) the place where the injury occurred,

"(b) the place where the conduct causing the injury occurred,

"(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

"(d) the place where the relationship, if any, between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

Whether a matter sounds in tort or in contract depends on the law of the forum state. Section 7(2), Restatement of Law 2d, *supra.*

When this court initially considered the case of *Rixey v. Nationwide Ins. Co., supra,* the Ohio Supreme Court had not definitively ruled on whether an uninsured/underinsured motorist insurance claim arising from an out-of-state automobile accident was a tort claim or a contract claim. The Rixeys were injured in the state of Maryland while passengers in a car registered in Maryland and driven by a Maryland driver. The driver of the car that caused the Rixeys' accident left the scene. Although there were witnesses who saw the accident, there was no physical contact between the vehicles.

When the Rixeys exhausted the uninsured motorist coverage on the car in which they were riding, they made an underinsured motorist claim on their own policy with Nationwide. Nationwide denied the claim, citing a clause in the policy denying coverage absent physical contact with another vehicle. At the time, Ohio

law permitted such a clause,[2] while Maryland law found it repugnant to public policy.

In an Ohio court, the Rixeys sought a declaration of coverage. They argued that since their claim arose out of a tort action, Sections 145 and 146 of the Restatement should apply and Maryland law should control. Therefore, the physical contact/phantom driver clause should not prevail. Nationwide countered that an uninsured motorist claim was essentially a claim on a contract and, applying Section 188 of the Restatement, Ohio law should prevail and coverage be denied. The trial court found the claim based in contract, applied Ohio law, and denied coverage. The Rixeys appealed to us.

While we considered *Rixey,* the Ohio Supreme Court handed down its decision in another case involving an Ohio uninsured/underinsured motorist claim in an out-of-state accident. In *Kurent v. Farmers Ins. of Columbus* (1991), 62 Ohio St.3d 242, 581 N.E.2d 533, Ohio motorists were injured in a Michigan accident. Because Michigan's no fault insurance law denied noneconomic damages for persons who did not suffer serious impairment of bodily functions, permanent disfigurement, or death, the Michigan tortfeasors' insurer refused to pay the Kurents noneconomic damages. When the Kurents claimed against their own underinsured motorist coverage with Farmers, Farmers denied coverage on the ground that liability could not be more than that defined by Michigan law.

The Supreme Court (considering that Kurent's injury occurred in Michigan, the conduct causing the injury occurred in Michigan, and the tortfeasor was a Michigan resident) concluded that Michigan law governed the dispute.

The court explained the basis of its decision:

"Our decision to apply Michigan tort law to the underlying accident is consistent with the Restatement of the Law of Conflicts approach we adopted in *Morgan v. Biro Mfg. Co.* (1984), 15 Ohio St.3d 339, 341–342, 15 OBR 463, 465–466, 474 N.E.2d 286, 288–289. Specifically, Section 146 of 1 Restatement of the Law 2d, Conflict of Laws (1971) 430, creates a presumption that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit. Comment *d* to Section 146 emphasizes that the state in which both the conduct and the injury occur has the dominant interest in regulating that conduct, determining whether it is tortious in character, and determining whether the interest is entitled to legal protection. *Id.* at 431.

"Section 145 of the Restatement of the Law of Conflicts 2d, *supra,* at 414, sets forth factors to determine whether one state has a more significant relationship to the lawsuit. These include the place of injury, the place where the conduct

---

2. The validity of such a clause has since been legislatively amended. See R.C. 3937.18(E).

causing the injury occurred, the residence or place of incorporation and/or business of the parties, and the place where the relationship between the parties is centered." *Kurent* at 246, 581 N.E.2d at 536–537.

We applied the *Kurent* analysis to the *Rixey* claim and concluded it to be governed by Maryland law, which found the no physical contact rule repugnant to public policy. Our decision was appealed to the Supreme Court of Ohio, but later dismissed on a joint motion of the parties.

In the present matter, appellees advanced and the trial court accepted that an uninsured/underinsured motorist claim presents some sort of hybrid analysis. The court concluded that the determination of "legal liability" is controlled by the tort law of the state where the accident occurred, but once the "legal liability" is set, courts are to apply contract law to determine whether an insured is actually compensated for his or her uninsured or underinsured loss.

We find nothing in *Kurent, Rixey,* or the Restatement to support this proposition. In fact, the Kurents specifically argued that " * * * even though Michigan tort law applies to the actual accident, Ohio tort law should be applied to the accident for purposes of determining uninsured motorist coverage." *Kurent* at 247, 581 N.E.2d at 537.[3] The Supreme Court rejected that argument, stating that it was " * * * not persuaded that Ohio's interests are sufficient to override the presumption that the place where the injury occurred determines the rights and liabilities of the parties." *Id.*

In *Rixey,* we concluded that once the choice of law is made, it operates not only to diminish coverage, but to expand it as well.

Finally, the Restatement sets up a clear and concise method of resolving conflicts of law. Once it is determined whether a suit sounds in tort or in contract, separate analyses are employed to determine what law should control the issue. We find nothing in the Restatement which favors a split or a hybrid action.

If we apply a Restatement of Laws analysis to an out-of-state uninsured/underinsured motorist claim, the choice of law is a foregone conclusion depending on how the claim is classified. If an uninsured/underinsured motorist claim sounds principally in contract, then Section 188 of the Restatement favors the law of the place of contracting and the domicile of the parties to the contract. If an

---

3. The trial court in the present case cites *Kurent* at 245, 581 N.E.2d at 535–536, stating, "It is axiomatic that an insured's claim for UM coverage is determined by the insurance contract * * *." This was the position advanced by the Kurents, opposed by the insurer, and rejected by the court. *Id.* at 245–246, 581 N.E.2d at 535–537.

uninsured motorist claim is a contract claim, then Ohio law prevails and, in this particular instance, appellant's claim would be unavailing.

On the other hand, if the claim sounds in tort, application of Sections 145 and 146 of the Restatement creates a presumption that the law of the place of injury holds forth. If an uninsured/underinsured motorist claim is a tort claim, then the law of the state in which the injury occurred presumptively controls.

Clearly, by the analysis employed, the factors considered, and the authority followed, the Ohio Supreme Court in *Kurent* determined that an out-of-state uninsured/underinsured motorist claim sounds in tort. Consequently, if *Kurent* remains good law, appellant should prevail here.

However, appellees suggest that *Kurent* has been supplanted by *Landis v. Grange Mut. Ins. Co.* (1998), 82 Ohio St.3d 339, 695 N.E.2d 1140, which, according to appellees, holds that uninsured/underinsured motorist claims are based on contract.

We initially decided *Landis* on appeal. See *Landis v. Grange Mut. Ins. Co.* (Feb. 21, 1997), Erie App. No. E–96–034, unreported, 1997 WL 77546. The case centered on whether prejudgment interest should be awarded under R.C. 1343.03 even given a good faith effort by an insurer to settle. In *Landis,* we held that a declaratory judgment action disputing uninsured motorist coverage was founded in contract and, therefore, eligible for prejudgment interest under R.C. 1343.03(A). The Ohio Supreme Court, acknowledging that the underlying claim was premised on tortious conduct, affirmed our holding. *Landis, supra,* 82 Ohio St.3d at 341, 695 N.E.2d at 1141–1142.

*Landis* did not involve an out-of-state claim, did not implicate any conflict-of-law analysis and, moreover, did not expressly overrule *Kurent.* For these reasons, we must reject appellees' assertion that *Landis* has changed the characterization of an out-of-state, uninsured/underinsured motorist claim for purposes of a conflict-of-laws analysis.

Consequently, we conclude that since *Kurent* classifies this type of claim as sounding in tort, a conflict-of-laws analysis inevitably leads us to conclude that the governing law in this matter is that of the state of Mississippi. Accordingly, appellant's single assignment of error is well taken.

Appellees urge us to find, nevertheless, that Mississippi law permits a setoff against policy limits. Appellees also urge us to find that appellant's bad faith claim has been abandoned. Because the trial court applied Ohio law, it never reached these issues and we decline to do so for the first time on appeal.

On consideration whereof, the judgment of the Lucas County Court of Common Pleas is reversed. This matter is remanded to said court for further consideration in conformity with this opinion. Costs to appellees.

*Judgment reversed*
*and cause remanded.*

HANDWORK, P.J., and PIETRYKOWSKI, J., concur.