JOURNAL ENTRY AND OPINION.
{¶ 1} Appellant Charles Toma ("Toma") appeals from the decision of the Cuyahoga County Court of Common Pleas, Probate Division, that entered a judgment against him and ordered him to return assets to the estate of Margaret E. Meszaros. For the reasons that follow, we affirm.
 {¶ 2} The following facts give rise to this appeal. Appellee Timothy N. Toma, Ancillary Administrator of the Estate of Margaret E. Meszaros ("the Administrator"), filed a complaint for declaratory judgment against Toma and several other defendants who are not parties on this appeal. The Administrator alleged Toma had improperly converted funds in the amount of $175,443.07 that belonged to Margaret E. Meszaros ("Meszaros") and sought a declaration that those funds were assets of the estate.
 {¶ 3} In 1989, Meszaros contacted Toma, her first cousin, and asked him to travel to Florida to help her manage her investment funds. Toma, who resided in Oklahoma, went to Florida and set up a meeting with Meszaros and an investment advisor from Prudential Bache Securities. Toma recommended that Meszaros and he open the Prudential account together, and the two established a joint account with right of survivorship.
 {¶ 4} In 1995, Toma again went to Florida to help Meszaros reconcile her checking account with First Union. After Toma and Meszaros met with a bank representative, Toma's name was added as joint and survivor.
 {¶ 5} In 1996, Meszaros' health was deteriorating, and she planned to move to Ohio. Despite her desire to move to Ohio, Toma made arrangements for Meszaros to be admitted to a nursing home in Oklahoma. Around this time, Toma filled out an application for a joint-tenancy survivor benefit account with Charles Schwab and signed the application for Meszaros as attorney in fact. Toma also established a joint and survivor account at the Bank of Oklahoma and had Meszaros sign the application. Toma deposited funds from the Prudential account into the Oklahoma joint account. Toma then engaged in a course of writing checks to himself and family members and withdrawing substantial funds from the joint accounts for his personal benefit.
 {¶ 6} After being moved to Oklahoma, Meszaros continued to express her desire to move to Ohio. Ultimately, Toma arranged for Meszaros' transportation to Ohio. However, Toma maintained control over Meszaros' accounts and kept control over her checkbook, despite her demand for its return. Toma did send money for Meszaros' care in Ohio and provided Meszaros with a small amount of her money for her personal expenses.
 {¶ 7} Following her move to Ohio, Meszaros retained an attorney, Alexandra Hull, to recover her assets from Toma. Meszaros told Hull that she was distressed about Toma's handling of her funds, that she wanted to get her assets back from Toma, and that she wanted Toma to receive nothing upon her death.
 {¶ 8} In December 1996, Hull sent a letter to Toma advising him that his power of attorney was being revoked and demanding the immediate return of Meszaros' assets. Despite this demand, Toma continued to withdraw large sums from the joint accounts and issued checks to his attorney, totaling $84,155.93, for deposit into a trust account. Meszaros died in January 1997. The day after her death, Toma secured a check from his attorney for $86,000. Thereafter, through his attorney, Toma sent a letter to the Ohio estate stating that he expected to receive his bequest of GE stocks.
 {¶ 9} After the Administrator filed this declaratory judgment action in the probate court, Toma filed a motion to dismiss for lack of personal jurisdiction. The motion was heard by a magistrate who recommended that the case be dismissed. However, the Administrator filed objections to the recommendation that were sustained by the court. The trial court also denied the Administrator's motion for summary judgment, and the case was referred to a magistrate for trial.
 {¶ 10} In the interim, Toma filed a writ of prohibition with this court arguing that the probate court lacked personal jurisdiction over him. We granted summary judgment against Toma, and the Supreme Court of Ohio affirmed, finding that personal jurisdiction was not patently and unambiguously lacking in this case. State ex rel. Toma v. Corrigan (Nov. 2, 2000), Cuyahoga App. No. 78316, affirmed 92 Ohio St.3d 589,2001-Ohio-1289.
 {¶ 11} The case proceeded to trial before a magistrate. Following the magistrate's decision, the Administrator and Toma filed cross objections. In its judgment entry, the trial court sustained the Administrator's objections, overruled Toma's objections, and partially modified the magistrate's decision. The trial court found it had personal jurisdiction over Toma; Toma violated his fiduciary obligations to Meszaros pertaining to transfers of Meszaros' assets totaling $84,787.07; Toma's actions with regard to the $84,155.93 paid over to his attorney were adverse to Meszaros' rights to those assets; Ohio law applied to the controversy; and under Ohio law, Toma's survivorship rights were terminated by his wrongful exercise of dominion and control over the assets he transferred to the trust account.
 {¶ 12} The court declared that the funds taken from the joint accounts, totaling $168,943, were assets of the estate held in constructive trust by Toma. The court also ordered Toma to return those funds to the Administrator and permitted the Administrator to set off any estate assets due to Toma as beneficiary if the funds were not paid within seven days.
 {¶ 13} Toma appeals the decision of the trial court and asserts four assignments of error for this court's review. Toma's first assignment of error provides:
 {¶ 14} "The trial court erred in finding that it had personal jurisdiction over the appellant and, therefore, its judgment is void ab initio."
 {¶ 15} The Administrator brought this as a declaratory judgment action to declare certain funds, which belonged to Meszaros and were allegedly converted by Toma, assets of Meszaros' estate. The Ohio Supreme Court has previously recognized that a declaratory judgment action may be brought in the probate court to determine the validity of inter vivos transfers where the property would revert to the estate if the transfer were declared invalid. State ex rel. Lipinski v. Cuyahoga Cty. Court ofCommon Pleas, Probate Division, 74 Ohio St.3d 19, 22, 1995-Ohio-96.
 {¶ 16} Toma argues the trial court erred in exercising personal jurisdiction over him because the tortious injury occurred outside Ohio and the Administrator's claim did not arise from Toma's activities in Ohio. The trial court's determination of whether personal jurisdiction exists over a party is a question of law that we review de novo. InteriorServs. v. Iverson, Hamilton App. No. C-020501, 2003-Ohio-1187.
 {¶ 17} To determine whether the trial court had personal jurisdiction over Toma, we must determine "(1) whether Ohio's long-arm statute, R.C. 2307.382, and the applicable Rule of Civil Procedure, Civ.R. 4.3(A), confer personal jurisdiction and, if so, (2) whether granting jurisdiction under the statute and rule would deprive the nonresident defendant of the right to due process of law under theFourteenth Amendment to the United States Constitution." State ex rel.Toma, 92 Ohio St.3d at 592, citing U.S. Sprint Communications Co., L.P.v. Mr. K's Foods, Inc. (1994), 68 Ohio St.3d 181.
 {¶ 18} Under the first part of the above standard, "R.C.2307.382(A)(6) and Civ.R. 4.3(A)(9) authorize a court to exercise personal jurisdiction over a nonresident defendant and to provide service of process to effectuate that jurisdiction if the cause of action arises from the defendant's `causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he [the person to be served] might reasonably have expected that some person would be injured thereby [by the act] in this state.' R.C. 2307.382(A)(6); differing wording of Civ.R. 4.3(A)(9) bracketed."State ex rel. Toma, 92 Ohio St.3d at 592.
 {¶ 19} We find that the facts of this case are sufficient to establish personal jurisdiction under Ohio's long-arm statute and applicable civil rule. Toma, while exercising powers granted to him as a fiduciary, wrongfully converted funds that belonged to Meszaros. Toma also refused to provide Meszaros with her checkbook and otherwise manipulated and controlled the accounts even after she moved to Ohio. Toma effectively caused Meszaros to suffer injury in Ohio by preventing her access to her accounts while he continued to deplete them. Further, Toma arranged for Meszaros' transportation to Ohio, sent money for Meszaros' care in Ohio, and provided Meszaros with limited funds from the accounts for her personal use in Ohio.
 {¶ 20} Toma's actions were directed to deprive an Ohio resident of her funds and to deplete the assets of her Ohio estate. These facts sufficiently establish that the tortious injury occurred in Ohio. Moreover, under these facts, Toma could reasonably have expected that Meszaros and her estate would be injured in Ohio as a result of his actions. See also, Herbuck v. Lajolla Capital (Sept. 27, 2000), Summit App. No. 19586 (nonresident's tortious acts, including conversion, outside Ohio while knowing that stock involved was of an Ohio corporation satisfied requirements of R.C. 2307.382(A)(6)); Jackson v. State StreetBank Trust Co. (1996), 110 Ohio App.3d 388 (out-of-state bank's failure to verify checks forged and cashed in Ohio causing Ohio resident to lose nearly all of her insurance proceeds was sufficient to establish tortious injury in Ohio).
 {¶ 21} Next, we consider the second part of the personal jurisdiction analysis under which "[a]n Ohio court may assert personal jurisdiction over a nonresident defendant if the nonresident has certain minimum contacts with Ohio so that the case does not offend traditional due process concerns of fair play and substantial justice. The constitutional touchstone is whether the nonresident defendant purposely established contacts in Ohio so that the defendant should reasonably anticipate being haled into court there." State ex rel. Toma,92 Ohio St.3d at 593 (internal citations omitted). In determining that personal jurisdiction over Toma existed in this case, the trial court relied upon the Ohio Supreme Court's determination that:
"Exercising personal jurisdiction over Toma in the probate court actionappears to comport with fair play and substantial justice. One couldreasonably infer from the allegations of the administrator's complaintthat Toma, at a time when Meszaros was totally dependent upon him,facilitated her move to Ohio and paid for her care in this state byGordyan, so that the move was not a completely unilateral choice by athird party. As alleged by the administrator, Toma himself establishedcontacts with Ohio and then purposefully converted assets intended forthe Ohio resident and her estate. Under these circumstances, Toma couldreasonably anticipate being haled into an Ohio court to answer concerninghis transactions relating to Meszaros and her estate." Id. at 593.
 {¶ 22} The trial court found the allegations raised in the complaint that were referenced by the Supreme Court had adequately been proven at trial, and therefore the court had personal jurisdiction over Toma. We reach the same conclusion upon our review of the evidence. Not only did Toma assist with Meszaros' move to Ohio and pay for her care in this state while continuing to convert assets and control her access to the accounts, but also, Toma testified that he, through his attorney, sent a letter to the Ohio estate stating that he expected to receive his bequest of GE stocks. We find that Toma's contacts with Ohio were such that the trial court's exercise of personal jurisdiction over him did not offend traditional due process concerns of fair play and substantial justice.
 {¶ 23} Accordingly, we find the trial court had personal jurisdiction over Toma. Toma's first assignment of error is overruled.
 {¶ 24} Toma's second assignment of error provides:
 {¶ 25} "The trial court erred in applying the substantive law of Ohio to determine ownership of accounts located in Oklahoma and Florida."
 {¶ 26} In reviewing the trial court's decision to apply Ohio law to this action, we employ a de novo standard of review. See Whyte v.Canada Steamship Lines, Inc. (July 24, 1997), Cuyahoga App. No. 71414. When determining a choice of law question, it is presumed that the law of the place of injury controls unless another jurisdiction has a more significant relationship to the lawsuit. Morgan v. Biro Mfg. Co. (1984),15 Ohio St.3d 339.
 {¶ 27} A trial court determines choice of law based on the following factors: (1) the place of injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under the Restatement of Law 2d, Conflict of Laws 10, Section 6,[1] which the court deems relevant to the litigation. Id. at 342. Each factor is to be evaluated according to its relative importance to the case. Id.
 {¶ 28} In this case, while Toma is a nonresident whose conduct took place outside Ohio, there are significant factors that link this case to Ohio. Although the funds were taken from Florida and Oklahoma accounts, Toma's control over the accounts and his actions to prevent Meszaros from reaching her funds caused her to suffer injury in Ohio. Toma assisted in moving Meszaros to Ohio and then proceeded to take actions that were directed to injure an Ohio resident and her Ohio estate. Ohio therefore has a substantial interest in deciding this action. Toma also issued a letter to the Ohio estate seeking to claim assets of the estate as a beneficiary. Under these circumstances, Toma should have anticipated being brought into an Ohio court and subjected to the laws of this state. We find that Ohio is not only the place of injury, but also, it is the state with the most significant relationship to the lawsuit.[2]
 {¶ 29} Toma's second assignment of error is overruled.
 {¶ 30} Toma's third assignment of error provides:
 {¶ 31} "The trial court committed prejudicial error by denying the appellant his constitutional right to a trial by jury despite the timely assertion of a jury demand in accordance with Civil Rule 38."
 {¶ 32} Toma argues the trial court erred by holding a bench trial when he filed an answer with a jury demand and did not expressly waive his right to a jury trial. The record reflects that Toma never objected to proceedings before a magistrate rather than a jury trial.
 {¶ 33} Toma urges us to follow Carl Sectional Home, Inc. v. KeyCorp. (1981), 1 Ohio App.3d 101, a criminal case which held that a properly demanded jury trial cannot be waived by silence. This court specifically rejected the application of Carl Sectional Home to civil actions in Nenadal v. Landerwood (May 12, 1994), Cuyahoga App. No. 65428. In Nenadal we held that a party waives his right to a jury trial by not objecting or raising the issue in a timely fashion, notwithstanding a jury demand in their original pleading. Id. As we explained:
"To adopt the plaintiffs' argument and the Carl Sectional rationalewould allow a party to have his day in court and, if he did not like theresult, only afterward object to lack of a jury despite not raising theissue before the trial started. We do not think it is wise to allow muteparties to have `two bites at the apple' when their silence may haveinduced the court below to believe their right to jury trial was waived.
 "* * *
 "We also find that the present issue falls within the familiar rulethat a party waives his right to raise for the first time on appeal thaterror which was not raised at the trial below." Id., see also Henning v.Steiner (Oct. 7, 1992), Wayne App. No. 2725 (holding that a party by proceeding to a bench trial without objection waives his right to a jury trial).
 {¶ 34} Other courts have since reached the same conclusion. SeeDale Madeline Bennington Creative Investors v. Robinson (Feb. 7, 2000), Stark App. No. 1999CA00212 (defendant waived his right to a jury trial by proceeding to a bench trial before a magistrate); CavanaughBldg. Corp. v. Liberty Elec. Co. (Apr. 28, 1999), Summit App. 19146 (appellant waived right to jury trial where he permitted appellees to present their entire case to the magistrate before finally raising a jury trial objection); Foremost Ins. Co. v. Gimbel Agency (Aug. 29, 1997), Portage App. No. 96-P-0203 (following Nenadal, supra).
 {¶ 35} Based on the foregoing authority, we find that Toma waived his right to a jury trial by failing to timely object to the proceedings before the magistrate. Toma's third assignment of error is overruled.
 {¶ 36} Toma's fourth assignment of error provides:
 {¶ 37} "The trial court erred in overruling the magistrate's recommendation that the appellant be credited with the sum of $6,184.00 for expenses he incurred for the care of the decedent."
 {¶ 38} Toma states the parties stipulated that he had incurred $6,184 in expenses for the care of Meszaros and that the trial court was not free to disregard the stipulation and recommendation of the magistrate. However, a review of the judgment entry reflects that the trial court did consider these expenses. The trial court's entry provided that the Administrator could apply any estate assets due to Toma as a beneficiary as part of the satisfaction of the debt owed to him pursuant to R.C. 2113.59. R.C. 2113.59 permits an estate administrator to set off a beneficiary's debt against any share of the estate to which the beneficiary is entitled.
 {¶ 39} Insofar as the trial court did not apply the setoff to the judgment amount, Toma waived his claim to a setoff in this action by failing to plead the same as an affirmative defense pursuant to Civ.R. 8(C). See Gadfield v. Ferris Chevrolet, Inc. (June 26, 1990), Tuscarawas App. No. 89AP090072.
 {¶ 40} Toma's fourth assignment of error is overruled.
Judgment affirmed.
KENNETH A. ROCCO, A.J., and FRANK D. CELEBREZZE, JR., J., concur.
[1] {¶ a} The Restatement identifies the following factors as relevant:
{¶ b} "a) the needs of the interstate and international systems,
{¶ c} "b) the relevant policies of the forum,
{¶ d} "c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
{¶ e} "d) the protection of justified expectations,
{¶ f} "e) the basic policies underlying the particular field of law,
{¶ g} "f) certainty, predictability, and uniformity of result, and
{¶ h} "g) ease in the determination and application of law to be applied." Id. at 342; quoting 1 Restatement of Law 2d, Conflict of Laws 10.
[2] Lewis v. Steinreich, 73 Ohio St.3d 299, 1995-Ohio-133, relied on by Toma, is distinguishable from this case. Unlike this action, in Lewis, the decedent maintained complete dominion and control over the joint accounts he established with his daughter until his death. Id.