[Cite as *Bentley v. Equity Trust*, 2015-Ohio-4735.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | | |
|---|---|---|
| CARYLL BENTLEY, et al. | | C.A. No. 14CA010630 |
| Appellants | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| EQUITY TRUST COMPANY, et al. | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellee | | CASE No. 13CV179526 |

DECISION AND JOURNAL ENTRY

Dated: November 16, 2015

SCHAFER, Judge.

{¶1}  Plaintiffs-Appellants, Caryll Bentley, et al. ("Appellants"), appeal the judgment of the Lorain County Court of Common Pleas that granted summary judgment in favor of Defendants-Appellees, Equity Trust Co., et al.  For the reasons set forth below, we reverse.

I.

{¶2}  Appellants are a class of 27 investors who lost a significant amount of money in a Ponzi scheme devised by Robert Langguth.  Mr. Langguth is currently serving four years in federal prison after pleading guilty to wire fraud and money laundering in 2012.  The scheme involved "bridge loans," which are short term loans used to provide financing to a borrower in order to purchase and improve real estate with the intent of eventually selling off the real estate to repay the loans.  Equity Trust Company is a South Dakota corporation that provides self-directed IRAs and 401ks for its clients.  Equity Trust's headquarters and principal place of

business are located in Cuyahoga County, Ohio. Appellants invested in Mr. Langguth's scheme using funds from their self-directed IRAs for which Equity Trust served as the passive custodian.

{¶3} On February 27, 2013, Appellants filed a complaint against Equity Trust, Mr. Langguth and his wife, and a corporation wholly owned by the Langguths in the Lorain County Court of Common Pleas.[1] The complaint asserted claims for violation of the Texas Securities Act, aiding and abetting breach of fiduciary duty, civil conspiracy, and two claims of fraud against Equity Trust. Equity Trust subsequently filed a motion for judgment on the pleadings pursuant to Civ.R.12(C) and the trial court stayed all discovery pending the resolution of that motion. The trial court eventually denied Equity Trust's motion for judgment on the pleadings, but afterwards partially lifted the discovery stay and allowed discovery on the following issues: "1) the duties and responsibilities of the parties as outlined in the Custodial Account Agreement, and 2) application of the choice of law provision in the Custodial Account Agreement."

{¶4} After the parties completed this limited discovery, Equity Trust filed a motion for partial summary judgment. Specifically, Equity Trust moved for summary judgment on the common law tort claims, arguing that such claims are barred by the express terms of the Custodial Account Agreements and that aiding and abetting a breach of fiduciary duty is not a recognized cause of action under Ohio law. Equity Trust did not move for summary judgment on the Texas Securities Act claim. Appellants filed a response to Equity Trust's motion for partial summary judgment, as well as a motion to lift the trial court's discovery stay, or,

---

[1] Appellants originally filed suit against Equity Trust in the United States District Court for the Western District of Texas. At the request of Equity Trust, the district court dismissed all of the claims pursuant to Fed.R.Civ.P. 12(b)(3) for improper venue based on a forum selection clause contained in the parties' Custodial Account Agreements that requires all lawsuits to be filed in Lorain County, Ohio.

alternatively, for additional time to respond to Equity Trust's motion. On June 25, 2014, the trial court entered summary judgment for Equity Trust on all claims and dismissed the case.

{¶5} Appellants now appeal from the trial court's June 25, 2014 judgment and raise one assignment of error for our review.

II.

**Assignment of Error**

**The trial court erred by granting summary judgment on all counts in favor of Defendant Equity Trust.**

{¶6} Appellants argue that the trial court erred by granting summary judgement in favor of Equity Trust on all counts. They advance three arguments in support of their assignment of error. First, Appellants argue that the trial court erred by granting summary judgment on the Texas Securities Act claim when Equity Trust did not even move for summary judgment on that claim. Second, Appellants contend that the trial court erred by concluding that their individual contracts with Equity Trust precluded their tort claims. Third, Appellants assert that the trial court erred in finding that under the choice of law provision within the respective contracts, Ohio law governed their common law tort claims. We agree with Appellants on all three points.

A. Standard of Review

{¶7} We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996). Summary judgment is only appropriate where (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. Civ.R. 56(C). Before making such a contrary finding, however, a court must view the facts in the light most

favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

{¶8} Summary judgment consists of a burden-shifting framework. To prevail on a motion for summary judgment, the party moving for summary judgment must first be able to point to evidentiary materials that demonstrate there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt,* 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 449 (1996).

## B. Texas Securities Act Claim

{¶9} Appellants argue, and Equity Trust concedes in its brief, that the trial court erred in granting summary judgment in favor of Equity Trust on their Texas Securities Act claim. We agree.

{¶10} "Civ.R. 56 does not authorize courts to enter summary judgment in favor of a non-moving party." *Marshall v. Aaron,* 15 Ohio St.3d 48 (1984), syllabus. "'A trial court has no authority to sua sponte grant summary judgment upon grounds which were not first addressed in a valid motion submitted by the prevailing party.'" *Miller v. Pennitech Indus. Tools, Inc.,* 9th Dist. Medina No. 2356–M, 1995 WL 230894, *6 (Apr. 19, 1995), quoting *Salter v. Marco,* 9th Dist. Lorain No. 91CA005182, 1992 WL 112565, *2 (May 20, 1992). "Nor does a court have

the authority to grant summary judgment in the absence of motion or argument on a particular claim." *Id.*

**{¶11}** Here, the trial court granted summary judgment in favor of Equity Trust on the Texas Securities Act claim. However, Equity Trust did not move for summary judgment on this issue. Therefore, in the absence of a motion filed on this particular claim, we determine that the trial court lacked the authority to grant summary judgment on this basis. *See id.* Indeed, Equity Trust concedes this point in its brief.

### C. Effect of Parties' Contract on Appellants' Remaining Tort Claims

**{¶12}** We now turn to Appellants' remaining claims for fraud, civil conspiracy, and aiding and abetting a breach of a fiduciary duty. The trial court found that the Custodial Account Agreements between Appellants and Equity Trust preclude them from asserting any of these claims. Indeed, the agreements do contain broad exculpatory clauses, including a provision in which Equity Trust disclaims any fiduciary duties to Appellants and a section stating that Appellants will hold Equity Trust harmless for any investment or sale that violates state or federal law. However, we find that these provisions do not bar Appellants' claims in this matter.

**{¶13}** To properly consider the effect of the contracts' hold harmless clause and disclaimer, we must first determine whether Appellants' claims sound in tort or contract. The Ohio Supreme Court has described the tort-contract distinction as follows:

> Torts arise from the breach of certain duties of conduct that are *imposed by law* for the protection of all persons within range of the harm or injury proximately resulting from such breach. Contractual duties, on the other hand, arise from the specific agreement of the parties to the contract.

(Emphasis added.) *Kocisko v. Charles Shutrump & Sons Co.*, 21 Ohio St.3d 98, 99 (1986); *see also Elizabeth Gamble Deaconess Home Assn. v. Turner Constr. Co.*, 14 Ohio App.3d 281, 284-285 (1st Dist.1984) ("Torts are based on duties of conduct that are imposed by law, stem from

general social policy, and protect all persons within the range of harm or injury to be anticipated from a breach of the duty of conduct. Contractual duties, on the other hand, arise from the specific agreement of the parties[.]"). In considering this tort/contract distinction, Ohio courts have previously recognized that claims for fraud, *see, e.g.*, *Burr v. Bd. of Cty. Commrs. of Stark Cty.*, 23 Ohio St.3d 69 (1986), paragraph two of the syllabus, civil conspiracy, *see, e.g.*, *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 126 (1987), and breaches of fiduciary duty, *see, e.g.*, *Cassner v. Bank One Trust Co., N.A.*, 10th Dist. Franklin No. 03AP-1114, 2004-Ohio-3484, ¶ 22, all sound in tort.

**{¶14}** Since Appellants' claims sound in tort, the contracts between Appellants and Equity Trust cannot bar Appellants from proceeding on their claims. In reaching this conclusion, we find our decision in *Hollinger v. Keybank Natl. Assn.*, 9th Dist. Summit No. 22147, 2004-Ohio-7182, instructive. In *Hollinger*, 83 individual investors filed a putative class action suit against Keybank asserting claims of fraud and civil conspiracy in connection with the bank allegedly aiding and abetting a scheme to defraud them. Keybank moved to stay the proceeding pending arbitration, asserting that the investors had each signed a deposit account agreement containing an arbitration provision. We affirmed the trial court's denial of the motion since we found that the plaintiff's claims fell outside the scope of the arbitration provision and could be asserted independently without reference to the contract between the plaintiffs and Keybank. *Id.* at ¶ 12. In reaching this result, we also provided the following reasoning, which is particularly prescient here:

> [T]he arbitration provision at issue is part of a contract between the parties. As such, a meeting of the minds regarding the terms of the contract is required. However, at the time the parties entered this contract, they could not have contemplated that [Keybank] would either conspire to commit fraud with a third party or fail to investigate the actions of a third party thereby aiding fraud perpetrated on its customers, because such an agreement would violate public

policy. Accordingly, this Court holds, as a matter of law, that the claims of fraud and civil conspiracy asserted by [the plaintiffs] as based on the particular facts of this case were not subject to the arbitration provision.

*Id.* at ¶ 13.

{¶15} We follow our rationale in *Hollinger* here and determine that Appellants' tort claims against Equity Trust also exist independently of their respective contracts. As such, we conclude that the Custodial Account Agreements do not preclude Appellants from bringing their tort claims against Equity Trust. Accordingly, we find that the trial court erred in finding that Appellants' contracts barred them from bringing their common law tort claims and in granting summary judgment in favor of Equity Trust on this basis.

### D. Remaining Tort Claims

{¶16} Our conclusion that the parties' contracts do not bar Appellants' tort claims does not end our analysis. The trial court found that Ohio law applied in this matter. This decision has significant effect on Appellants' claims[2] and we must consider this issue before remanding this matter to the trial court. This Court reviews a trial court's choice of law determination under a de novo standard. *Nationwide Mut. Fire Ins. Co. v. Rose*, 9th Dist. Lorain No. 05CA008814, 2007-Ohio-1216, ¶ 7.

{¶17} The parties disagree about which state's substantive law should be applied. Appellants argue it should be Texas; Equity Trust contends it should be Ohio. Both reach their conclusions based on their respective analyses of the general torts section of the Conflict of Laws Restatement. 1 Restatement of the Law 2d, Conflict of Laws, Sections 145 and 148 (1971). Although the parties' respective briefs conducted one combined analysis for all of the claims,

---

[2] Aiding and abetting a breach of a fiduciary duty is a recognized tort claim in Texas, but such a claim is not recognized in Ohio. Moreover, if Ohio law applied, then the Texas Securities Act claim would be jeopardized as well.

each claim must be analyzed separately based on the type of claim. *Lewis v. Horace Mann Ins. Co.*, 410 F.Supp.2d 640, 653-654 (N.D.Ohio 2005), *citing Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818 (6th Cir.1990). In performing this analysis, we apply the choice of law provisions contained in the Restatement (Second) of Conflict of Laws, as required by the Ohio Supreme Court. *See Morgan v. Biro Mfg. Co., Inc.*, 15 Ohio St.3d 339, 341-342 (1984) (adopting the Restatement (Second) of Conflict of Laws).

{¶18} Preliminarily, we note that Appellants' respective Custodial Account Agreements with Equity Trust all contain a choice of law provision. Although the wording of the choice of law provisions is not identical in every contract, it is comparable across all of the contracts to the following:

> *What Law Applies*: This Agreement is subject to all applicable federal laws and regulations and shall be governed by and construed under the applicable laws of the State of Ohio.

While the explicit language of these choice of law provisions mandate that Ohio law *govern* the Appellants' agreement with Equity Trust, it does not necessarily follow that Ohio law will *apply* to all claims that arise between the parties. *See Isaac v. Alabanza Corp.*, 7th Dist. Jefferson No. 05 JE 55, 2007-Ohio-1396, ¶ 16 (concluding that since the alleged torts occurred in Ohio, Ohio law controls those claims even though an underlying contract claim would likely be subject to Maryland law pursuant to the choice of law provision in the parties' employment contract). Therefore, we determine that the trial court's conclusion that the language of the Appellants' respective Custodial Account Agreements mandates the application of Ohio law to all disputes between the parties was erroneous.

1.   Civil Conspiracy & Aiding and Abetting Breach of a Fiduciary Duty Claims

**{¶19}**   To begin, Section 146 of the Second Restatement provides a presumption that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit.  Section 145 of the Second Restatement, which generally applies to tort claims, establishes a "significant relationship" test "to determine which state's law applies to a tort action in a choice-of-law situation*." Am. Interstate Ins. Co. v. G & H Serv. Ctr., Inc.*, 112 Ohio St.3d 521, 2007-Ohio-608, ¶ 8.   To determine the state with the most significant relationship, courts must consider the following factors: "1) the place of the injury; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; [and] 4) the place where the relationship between the parties, if any, is located."  *Morgan* at 342, citing 1 Restatement of Laws 2d, Conflict of Laws, Section 145(2).  "All of these factors are to be evaluated according to their relative importance to the case."  *Id*.

**{¶20}**   A review of the record indicates that the trial court did not apply the Restatement sections that corresponded to each of Appellants' claims.  Rather, the trial court applied Section 148 to all of Appellants' tort claims, not just their fraud claims.  This was error since Section 148 only applies to fraud and misrepresentation claims.  As such, we remand this matter to the trial court with instructions to apply Section 145 of the Restatement (Second) of Conflict of Laws to Appellants' non-fraud tort claims.

2. Fraud Claims

**{¶21}**   Claims of fraud and misrepresentation, however, are governed by Section 148 of the Restatement (Second) of Conflict of Laws, as the trial court correctly noted.  Section 148 applies "where the harm suffered by the plaintiff is pecuniary in nature," which "is the sort of

harm that is normally suffered through reliance on false representations." 1 Restatement of the Law 2d, Conflict of Laws, Section 148, Comment c (1971). For fraud-based claims, courts must consider the following factors:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

1 Restatement of the Law 2d, Conflict of Laws, Section148(2) (1971).

{¶22} When applied to the facts of this case, we determine that these factors weigh in favor of applying Texas law to Appellants' fraud claims, not Ohio law. Regarding the first and second factors, most of the Appellants resided in Texas, which is where they both received and acted in reliance upon the representations concerning their investment. The third factor weighs in favor of Ohio, as that is from where Equity Trust sent all communications to the Appellants. Fourth, most of the parties involved in this case are Texas residents. Fifth, the tangible thing that was the subject or focus of the transaction between the parties was the real estate in which the Appellants expected to receive a security interest, as this was the core of their investment opportunity. As the Appellants understood it at the time that they invested their money with Mr. Langguth, the bridge loans were financing the acquisition of and improvements to real estate situated in Texas. Lastly, the Appellants rendered performance of the transaction in Ohio, where

their Equity Trust IRAs, the accounts from which Appellants made their investments, were located.  As most factors weigh towards applying Texas law, we conclude that Texas law should apply to Appellants' common law fraud claims against Equity Trust.  The trial court therefore erred in determining that Ohio law would apply to Appellants' common law fraud claims.

**{¶23}**  In sum, we determine that the trial court erred in granting summary judgment to Equity Trust regarding all of Appellants' claims.  Accordingly, Plaintiffs-Appellants' sole assignment of error is sustained.

### III.

**{¶24}**  Based on our disposition of Plaintiffs-Appellants' assignment of error, the judgment of the Lorain County Court of Common Pleas is reversed.  This matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

JOHN C. CAMILLUS, Attorney at Law, for Appellants.

MICHAEL P. HARVEY, Attorney at Law, for Appellants.

DERRICK S. BOYD, Attorney at Law, for Appellants.

FRANCES FLORIANO GOINS, REEM S. HENDERSON, and ANDREW FONTANAROSA, Attorneys at Law, for Appellee.